GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS JR., Bar No. 132099
    tboutrous@gibsondunn.com
DANIEL G. SWANSON, Bar No. 116556
    dswanson@gibsondunn.com
SAMUEL LIVERSIDGE, Bar No. 180578
    sliversidge@gibsondunn.com
MINAE YU, Bar No. 268814
    sliversidge@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

GIBSON, DUNN & CRUTCHER LLP
CHRIS WHITTAKER, Bar No. 283518
    cwhittaker@gibsondunn.com
COURTNEY L. SPEARS, Bar No. 329521
    cspears@gibsondunn.com
3161 Michelson Drive, Suite 1200
Irvine, California  92612-4412
Telephone:    949.451.3800
Facsimile:    949.451.4220

Attorney for Defendants
CHEVRON CORPORATION and
CHEVRON U.S.A. INC.

*Additional attorneys listed on next page*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN HEROLD, GINA STABILE, LYNN ELIAS, MICHAEL SIMMONS, ROBERT LASIEWICZ, and NINA PHAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHEVRON U.S.A., INC.; VALERO MARKETING AND SUPPLY COMPANY; PBF ENERGY INC.; MARTINEZ REFINING COMPANY LLC; TORRANCE REFINING COMPANY LLC; MARATHON PETROLEUM COMPANY LP; and PHILLIPS 66 COMPANY,<br><br>Defendants. | Case No. 3:25-cv-10282-TLT<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    Tuesday, July 21, 2026<br>Time:    2:00 p.m.<br>Ctrm:    9<br>Judge:    Hon. Trina L. Thompson |

GIBSON, DUNN &
CRUTCHER LLP

MOTION TO DISMISS - 3:25-CV-10282-TLT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 21, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 9, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Chevron U.S.A., Inc., Valero Marketing and Supply Company, PBF Energy Inc., Martinez Refining Company LLC, Torrance Refining Company LLC, Marathon Petroleum Company LP, and Phillips 66 Company ("Defendants"), through their undersigned counsel, will, and hereby do, move to dismiss with prejudice the First Amended Complaint ("FAC") filed by Plaintiffs Ken Herold, Gina Stabile, Lynn Elias, Michael Simmons, Robert Lasiewicz, and Nina Phan ("Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

The Defendants seek dismissal of all claims with prejudice. This Motion is based on this Notice, the supporting Memorandum of Points and Authorities ("Memorandum"), all pleadings and other papers filed in this matter including the associated Request for Judicial Notice and declaration thereto, and any additional material and arguments as may be considered in connection with the hearing.

Dated: March 26, 2026

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Samuel G. Liversidge*
Samuel G. Liversidge
Theodore J. Boutrous Jr.
Daniel G. Swanson
Minae Yu
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
TBoutrous@gibsondunn.com
DSwanson@gibsondunn.com
SLiversidge@gibsondunn.com
Myu@gibsondunn.com

GIBSON, DUNN &
CRUTCHER LLP

- 2 -          MOTION TO DISMISS - 3:25-CV-10282-TLT

S. Christopher Whittaker
Courtney L. Spears
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, California  92612-4412
Telephone: (949) 451-3800
CWhittaker@gibsondunn.com
CSpears@gibsondunn.com

William Feldman
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8394
wfeldman@gibsondunn.com

*Attorneys for Defendant CHEVRON U.S.A. INC.*

Dated: March 26, 2026                **JONES DAY**

By: */s/ David Kiernan*

David Kiernan (Bar No. 215335)
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94101-1500
Telephone: (415) 626-3939
dkiernan@jonesday.com

Kelly Watne (Bar No. 307563)
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, California  90071
Telephone: (213) 489-3939
kwatne@jonesday.com

*Attorneys for Defendant MARATHON PETROLEUM COMPANY LP*

Dated: March 26, 2026

**CLEARY GOTTLIEB STEEN & HAMILTON**

By: */s/ Brian Byrne*

Brian Byrne (Bar No. 181362)
Matthew M. Yelovich (Bar No. 351330)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road
Palo Alto, CA 94304
650-815-4110
bbyrne@cgsh.com
myelovich@cgsh.com

C. Lawrence Malm (*pro hac vice*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Ave., NW
Washington, D.C. 20037
202-974-1500
lmalm@cgsh.com

*Attorneys for Defendants PBF ENERGY INC., MARTINEZ REFINING COMPANY LLC, and TORRANCE REFINING COMPANY LLC*

Dated: March 26, 2026

**HAWXHURST LLP**

By: */s/ Gerald E. Hawxhurst*

Gerald E. Hawxhurst
Kyle Foltyn-Smith
HAWXHURST LLP
10000 Santa Monica Blvd., Suite 3406
Los Angeles, CA 90067
Telephone: (310) 893-5150
jerry@hawxhurstllp.com
kyle@hawxhurstllp.com

*Attorneys for Defendant VALERO MARKETING AND SUPPLY COMPANY*

GIBSON, DUNN &
CRUTCHER LLP

Dated: March 26, 2026

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ Joshua D. Lichtman*

Joshua D. Lichtman (Bar No. 176143)
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street, Forty-First Floor
Los Angeles, CA 90071
213-892-9226
joshua.lichtman@nortonrosefulbright.com

Layne Kruse (*pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
713-651-5194
layne.kruse@nortonrosefulbright.com

*Attorneys for Defendant PHILLIPS 66 COMPANY*

GIBSON, DUNN &
CRUTCHER LLP

- 5 -      MOTION TO DISMISS - 3:25-CV-10282-TLT

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................1

II.  BACKGROUND .................................................................................................................3

    A.  The Parties ................................................................................................................ 3

    B.  Regulatory Background ............................................................................................ 4

    C.  CARB's LCFS Amendments .................................................................................... 5

    D.  Plaintiffs' Claimed Injury ........................................................................................ 7

III.  LEGAL STANDARD .........................................................................................................8

IV.  ARGUMENT ......................................................................................................................8

    A.  Plaintiffs' Antitrust Claims Should Be Dismissed ................................................... 9

        1.  Plaintiffs Fail to State an Antitrust Conspiracy Claim ................................. 9

        2.  Plaintiffs Lack Article III and Antitrust Standing ...................................... 17

    B.  Plaintiffs' UCL Claim Should Be Dismissed ........................................................ 26

        1.  Plaintiffs Lack Standing to Assert a UCL Claim ........................................ 26

        2.  Plaintiffs Fail to Allege a Cognizable UCL Claim ..................................... 28

        3.  Equitable Relief is Not Available ............................................................... 29

V.  CONCLUSION .................................................................................................................30

GIBSON, DUNN &
CRUTCHER LLP

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*,
141 F.3d 947 (9th Cir. 1998)................................................................................................16

*Ahn v. Stewart Title Guar. Co.*,
93 Cal. App. 5th 168 (2023)..................................................................................................21

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Ca.*,
190 F.3d 1051 (9th Cir. 1999)..............................................................................................21

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
19 F.4th 127 (2d Cir. 2021)............................................................................................21, 24

*Anderson v. Holder*,
673 F.3d 1089 (9th Cir. 2012)................................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................7

*Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*,
459 U.S. 519 (1983)..........................................................................................................21, 25

*Baby Food Antitrust Litig.*, 166 F.3d 112 (3d Cir. 1999) ...............................................................15

*Bakay v. Apple Inc.*,
2024 WL 3381034 (N.D. Cal. Jul. 11, 2024) ................................................................20, 22, 24

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
2019 WL 633008 (N.D. Cal. Feb. 14, 2019)........................................................................26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................7, 9, 11, 14

*Benton v. CVS Pharmacy, Inc.*,
604 F. Supp. 3d 889 (N.D. Cal. 2022) ................................................................................19

*Beverage v. Apple Inc.*,
101 Cal. App. 5th 736 (2004)................................................................................................29

*Bird v. First Alert, Inc.*,
2014 WL 7248734 (N.D. Cal. Dec. 19, 2014) ....................................................................30

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
691 F. App'x 389 (9th Cir. 2017) ........................................................................................14

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994)....................................................................................................5

GIBSON, DUNN &
CRUTCHER LLP

*Butler v. Porsche Cars N. Am., Inc.*,
  2016 WL 4474630 (N.D. Cal. Aug. 25, 2016)..................................................................19

*Cal. Crane Sch., Inc. v. Google LLC*,
  722 F. Supp. 3d 1026 (N.D. Cal. 2024) ..........................................................................28

*In re California Gasoline Spot Mkt. Antitrust Litig.*,
  2021 WL 1176645 (N.D. Cal. Mar. 29, 2021)...................................................................29

*Cascade Health Sols. v. PeaceHealth*,
  515 F.3d 883 (9th Cir. 2008)..........................................................................................22

*Cascades Computer Innovation LLC v. RPX Corp.*,
  2013 WL 316023 (N.D. Cal. Jan. 24, 2013) ....................................................................16

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ...................................................................................................28

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (2001)............................................................................................29

*Cholla Ready Mix, Inc. v. Civish*,
  382 F.3d 969 (9th Cir. 2004) ............................................................................................8

*In re Citric Acid*, 191 F.3d 1090 (9th Cir. 1999) ...............................................................15

*City of Oakland v. Oakland Raiders*,
  20 F.4th 441 (9th Cir. 2021)......................................................................................21, 25

*City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*,
  92 F.4th 381 (2d Cir. 2024).............................................................................................12

*D'Augusta v. Am. Petroleum Inst.*,
  117 F.4th 1094 (9th Cir. 2024)...............................................................................9, 11, 14

*Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*,
  523 F.3d 1116 (9th Cir. 2008).........................................................................................24

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019)............................................................................................8

*In re Domestic Airline Travel Antitrust Litig.*,
  691 F. Supp. 3d 175 (D.D.C. 2023) ................................................................................12

*In re DRAM Antitrust Litig.*,
  28 F.4th 42 (9th Cir. 2022).............................................................................................28

*In re DRAM Antitrust Litig.*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008) ..............................22, 23

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th at 1355 (2010)....................................................................................26

*Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538 (9th Cir. 1987) ............................................25

GIBSON, DUNN &
CRUTCHER LLP

*In re Elec. Carbon Prods. Antitrust Litig.*,
  333 F. Supp. 2d 303 (D.N.J. 2004) ........................................................................................12

*Erickson v. Nebraska Mach. Co.*,
  2015 WL 4089849 (N.D. Cal. July 6, 2015) .............................................................................6

*Fernandez v. Brock*,
  840 F.2d 622 (9th Cir. 1988).................................................................................................20

*Figy v. Amy's Kitchen, Inc.*,
  2013 WL 6169503 (N.D. Cal. Nov. 25, 2013).........................................................................27

*Fonseca v. Hewlett-Packard Co.*,
  2020 WL 4596758 (S.D. Cal. Aug. 11, 2020) .........................................................................14

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020).................................................................................................22

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
  250 F. Supp. 3d 438 (N.D. Cal. 2017) ...................................................................................14

*Guthrie v. Rainbow Fencing Inc.*,
  113 F.4th 300 (2d Cir. 2024).................................................................................................17

*Guzman v. Polaris Indus.*,
  49 F.4th 1308 (9th Cir. 2022).................................................................................................30

*Hangarter v. Provident Life & Acc. Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004)...........................................................................................17, 26

*Hansen Beverage Co. v. Innovation Ventures, LLC*,
  2009 WL 6597891 (S.D. Cal. Dec. 23, 2009)..........................................................................6

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
  2020 WL 6270948 (N.D. Cal. Oct. 23, 2020)........................................................................18

*Henning v. Luxury Brand Partners, LLC*,
  2023 WL 3555998 (N.D. Cal. May 11, 2023) .........................................................................27

*Honey Bum, LLC v. Fashion Nova, Inc.*,
  63 F.4th 813 (9th Cir. 2023)...................................................................................................9

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977).........................................................................................................3, 26

*In re iPhone Application Litig.*,
  6 F. Supp. 3d 1004 (N.D. Cal. 2013) ...............................................................................26, 27

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
  998 F.3d 397 (9th Cir. 2021)...................................................................................................8

*Jones v. Micron Tech. Inc.*,
  400 F. Supp. 3d 897 (N.D. Cal. 2019) ...................................................................................18

GIBSON, DUNN &
CRUTCHER LLP

iv                MOTION TO DISMISS - 3:25-CV-10282-TLT

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)......................................................................................27

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008)..................................................................................9, 11

*Key v. Qualcomm Inc.*,
  129 F.4th 1129 (9th Cir. 2025)................................................................19, 27, 29, 30

*King v. Nat'l Gen. Ins. Co.*,
  2025 WL 2494366 (N.D. Cal. Aug. 29, 2025)............................................................30

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
  232 F.3d 979 (9th Cir. 2000)..................................................................................21, 23

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994)........................................................................................................8

*Kolling v. Dow Jones & Co.*,
  137 Cal. App. 3d 709 (1982).........................................................................................21

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ................................................................................................29

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ..................................................................................................26

*Levine v. Vilsack*,
  587 F.3d 986 (9th Cir. 2009).........................................................................................20

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)................................................................................................17, 20

*In re MacBook Keyboard Litig.*,
  2020 WL 6047253 .........................................................................................................20

*Malheur Forest Fairness Coal. v. Iron Triangle, LLC*,
  164 F.4th 710 (9th Cir. 2026).....................................................................................8, 13

*In re Mexican Gov't Bonds Antitrust Litig.*,
  412 F. Supp. 3d 380 (S.D.N.Y. 2019)......................................................................11, 13

*Moore v. Mars Petcare US, Inc.*,
  820 F. App'x 573 (9th Cir. 2020) ..................................................................................17

*Moran v. Screening Pros, LLC*,
  943 F.3d 1175 (9th Cir. 2019)........................................................................................29

*Morrison v. Viacom, Inc.*,
  66 Cal. App. 4th 534 (1998)...........................................................................................21

*In re Musical Instruments & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015)...........................................................................11, 14, 15, 16

GIBSON, DUNN &
CRUTCHER LLP

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
 795 F.3d 1124 (9th Cir. 2015).................................................................................................9

*Nazemi v. Specialized Loan Servicing, LLC*,
 637 F. Supp. 3d 856 (C.D. Cal. 2022).................................................................................27

*Oliver v. SD-3C LLC*,
 2016 WL 5950345 (N.D. Cal. Sep. 30, 2016).....................................................................13

*In re Optical Disk Drive Antitrust Litig.*,
 2014 WL 3378336 (N.D. Cal. July 10, 2014)......................................................................12

*In re Optical Disk Drive Antitrust Litigation*,
 303 FRD 311 (N.D. Cal. 2014).............................................................................................18

*PAI Corp. v. Integrated Sci. Sols., Inc.*,
 2007 WL 1229329 (N.D. Cal. Apr. 25, 2007) ....................................................................14

*Persian Gulf Inc. v. BP West Coast Products LLC et al.*, 632 F. Supp. 3d 1108
 (S.D. Cal. 2022) ...................................................................................................................22

*Peterson v. Triplepoint Venture Growth BDC Corp.*,
 2024 WL 5384678 (N.D. Cal. Aug. 7, 2024).........................................................................5

*Phillips v. Brooklyn Bedding LLC*,
 2024 WL 2830663 (N.D. Cal. Mar. 28, 2024).....................................................................30

*POET LLC v. State Air Resources Bd.*,
 12 Cal. App. 5th 52 (2017).............................................................................................5, 10

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*,
 51 F.3d 1421 (9th Cir. 1995)................................................................................................22

*Rhynes v. Stryker Corp.*,
 2011 WL 2149095 (N.D. Cal. May 31, 2011) .....................................................................30

*Rubenstein v. The Gap, Inc.*,
 14 Cal. App. 5th 870 (2017).................................................................................................28

*Salmon Spawning & Recovery Alliance v. Gutierrez*,
 545 F.3d 1220 (9th Cir. 2008)..............................................................................................20

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
 22 F.4th 103 (2d Cir. 2021)..................................................................................................21

*Sonner v. Premier Nutrition Corp.*,
 971 F.3d 834 (9th Cir. 2020)................................................................................................29

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016)..............................................................................................................18

*Stover v. Experian Holdings*,
 978 F.3d 1082 (9th Cir. 2020)..............................................................................................26

GIBSON, DUNN &
CRUTCHER LLP

*Sud v. Costco Wholesale Corp.*,
229 F. Supp. 3d 1075 (N.D. Cal. 2017) ........................................................................18

*Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*,
445 F. Supp. 3d 139 (N.D. Cal. 2020) ...........................................................................6

*Toscana v. PGA Tour, Inc.*,
201 F. Supp. 2d 1106 (E.D. Cal. 2002) ........................................................................25

*Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*,
682 F. Supp. 2d 1003 (N.D. Cal. 2010) ........................................................................28

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)........................................................................................13

*Victorino v. FCA US LLC*,
2018 WL 2455432 (S.D. Cal. June 1, 2018) .................................................................20

*Vinci v. Waste Mgmt., Inc.*,
36 Cal. App. 4th 1811 (1995)....................................................................................21, 24

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) ..........................................................................................6

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000)..........................................................................................8

*Wholesale Elec. Antitrust Cases I & II*, 147 Cal. App. 4th 1293 (2007) .........................................21

**Statutes**

Cal. Bus. & Prof. Code § 16756.1 .......................................................................................14

Cal. Bus. & Prof. Code § 17200 .........................................................................................28

Cal. Bus. & Prof. Code § 17204 .........................................................................................26

Cal. Code Regs. tit. 17, § 95483 ..........................................................................................4

Cal. Code Regs. tit. 17, § 95484 .......................................................................................4, 6

Cal. Code Regs. tit. 17, § 95485 ...................................................................................4, 5, 10

Cal. Code Regs. tit. 17, § 95491 ...................................................................................4, 5, 10

Cal. Pub. Res. Code § 25355(b)(5) ....................................................................................4, 5

Cal. Pub. Res. Code § 25355(b)(6) ..........................................................................1, 4, 5, 22, 28

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................................13

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs allege that five oil refiners conspired to "inflate the reported compliance cost of the state's Low Carbon Fuel Standard ("LCFS") program, and to pass those inflated costs on to California consumers through increased gasoline prices." FAC ¶ 1. To survive dismissal, Plaintiffs must allege enough facts to show that a conspiracy was not just conceivable, but plausible. Plaintiffs get nowhere close to meeting that standard. The complaint does not allege a single collusive act by anyone, let alone that Defendants agreed to fix or inflate prices.

The LCFS program at the center of Plaintiffs' FAC aims to reduce greenhouse gases by requiring refiners to comply with increasingly strict annual carbon intensity targets. Refiners are required to submit monthly reports to the California Energy Commission ("CEC") that contain, among other data, the "volume weighted fees or *estimated valuations of costs*" of LCFS compliance "embedded in [their] wholesale gasoline sales" prices. Pub. Res. Code §25355(b)(6) (emphasis added). Plaintiffs' theory is that Defendants conspired to falsely inflate their estimated LCFS "costs" in these reports and then pass on those costs to consumers by affecting wholesale gasoline prices. FAC ¶ 98.[1] The claim is premised on the fact that the CEC reported that *aggregate* refiner LCFS costs increased by five to eight cents per gallon from January to May 2025. Plaintiffs contend there was no reason for LCFS costs to increase during this period, so the refiners must have conspired to report falsely inflated LCFS costs, and pass these costs through intermediate distributors, ultimately to consumers. These allegations do not establish a conspiracy or any other violation of the law.

To plausibly plead a conspiracy, Plaintiffs must allege: (1) that each individual Defendant engaged in parallel conduct and (2) that "plus factors" exist suggesting the parallel conduct was the result of an agreement, not Defendants unilaterally responding the same way to the same circumstances. The Complaint does not meet this standard.

---

[1] Pursuant to Rule 12(b), Defendants treat the allegations in the Amended Complaint as true only for the purpose of this Motion without conceding their veracity. For simplicity, Defendants utilize some of Plaintiffs' terminology even when it is imprecise and does not reflect industry usage or realities. For example, while the Amended Complaint refers to reported "LCFS costs," SB 1322 permits reporting of "volume weighted fees or *estimated valuations* of costs."

To begin, the complaint acknowledges a compelling reason for LCFS costs to increase starting on January 1, 2025.  In late 2024, the California Air Resources Board ("CARB") amended the annual LCFS standard for 2025, and that amendment *made annual compliance more difficult and costly* (something Plaintiffs do not dispute).  Against this backdrop, Plaintiffs fail to plead any facts that would allow this Court to infer a conspiracy.  As to parallel conduct, Plaintiffs plead none—with respect to LCFS costs, estimates reported to CEC, pricing, or anything else.  Plaintiffs instead rely solely on *aggregate* data published by the CEC showing *average* reported LCFS costs increased, which reveals nothing about any individual Defendant's reports.  And, although the point of the alleged conspiracy was supposedly to raise gasoline prices, Plaintiffs do not plead *any* gasoline price set by *any* Defendant, much less allege facts showing that they all incorporated inflated LCFS costs into their prices in parallel.  Plaintiffs' conclusory plus factor allegations—for example, that the market is "concentrated," and that gasoline prices have "spiked" in the past—likewise do not suggest that Defendants were colluding, as opposed to reacting to the same regulatory developments.

Plaintiffs' conspiracy theory also fails because it is nonsensical.  If the goal was to conspiratorially increase prices, Defendants could have just raised their prices—there is no need for the convoluted, roundabout mechanism Plaintiffs invent here.  Further, while Plaintiffs allege that Defendants raised their reported LCFS costs to provide cover for higher gasoline prices starting on *January 2025*, Plaintiffs admit that the CEC did not publicly disclose the increase in aggregate LCFS costs reported by refiners *until May 2025*.  This means that the reports of increased LCFS compliance costs could not have provided "cover" for any purported price increase.  Plaintiffs also fail to explain why or how Defendants would conspire to pass on increased LCFS compliance costs to Plaintiffs.  Most of the Defendants do not even own retail gas stations in California, and Plaintiffs do not allege that any of them set the retail prices Plaintiffs paid.  Nor are there any allegations that Defendants controlled the pricing decisions of tens of thousands of retailers and intermediate distributors, including what costs these third parties pass on to consumers.  In sum, Plaintiffs have alleged no well-pleaded facts that would allow the Court to infer any conspiracy existed.

Beyond this, dismissal with prejudice is necessary here because Plaintiffs do not have

GIBSON, DUNN &
CRUTCHER LLP

2        MOTION TO DISMISS - 3:25-CV-10282-TLT

Article III or antitrust standing. Plaintiffs are suing for alleged overcharges they paid as "indirect purchasers"—meaning they bought gasoline from *third parties*, not Defendants. Plaintiffs' conclusory allegations that Defendants' conduct led to purported overcharges in prices set by *third parties* are not sufficient to confer Article III or antitrust standing. The presence of intervening third parties that make their own pricing decisions cuts off any alleged causal link between Defendants' conduct and Plaintiffs' claimed injury. Moreover, under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), Plaintiffs' status as indirect purchasers categorically bars them for suing for damages under the Sherman Act. These incurable defects that preclude Plaintiffs from bringing their antitrust claims cannot be overcome by any amendment.

Finally, Plaintiffs' UCL claim fails. These claims mostly piggyback on Plaintiffs' antitrust claims and thus should be dismissed for the same reasons. Restyling the UCL claim to rest on independent fraudulent submissions by each Defendant (with no conspiracy) does not save it. Plaintiffs do not even allege that they saw or relied on—much less were harmed by—the allegedly fraudulent reporting, and thus they have no standing to bring this claim. Further, while Plaintiffs claim Defendants' reporting of LCFS costs was "inflated," they acknowledge the regulatory scheme requires only that Defendants "estimate" the LCFS costs associated with their wholesale sales. Moreover, as Plaintiffs do not allege any discrepancy between the submitted figures and reasonable estimates of Defendants' costs, there is no basis to contend the reports were false. Nor do their threadbare allegations—which identify no specific conduct by any Defendant— satisfy Rule 9(b), which applies to UCL claims based in fraud. Finally, to maintain a UCL claim Plaintiffs must show that they lack an adequate remedy at law—which they cannot do here, where they seek damages for precisely the same conduct.

Plaintiffs fail to state any viable claims and lack standing to pursue them. Having already amended their complaint once, their first amended complaint should be dismissed with prejudice in its entirety.

## II.    BACKGROUND

### A.    The Parties

Defendants are five oil refiners that supply gasoline to tens of thousands of gas stations and

GIBSON, DUNN &
CRUTCHER LLP

3    MOTION TO DISMISS - 3:25-CV-10282-TLT

other intermediaries located throughout California. FAC ¶¶ 19–24. While Plaintiffs and the putative class members allegedly purchased gasoline produced by Defendants, their claims are not based on any direct transactions with Defendants. *See id.* ¶¶ 14–18, 24. Instead, they are suing as indirect purchasers who bought Defendants' gasoline from third-party retailers. *Id.* ¶ 62 (defining the putative class as "[a]ll persons and entities who indirectly purchased gasoline that was supplied by at least one Defendant in the State of California at any time from January 1, 2025 until May 31, 2025"); *id.* ¶¶ 14–18, 24 (alleging that Plaintiffs purchased gasoline from third-party retailers supplied by Defendants).

Plaintiffs allege Defendants entered into a conspiratorial agreement to "to inflate the reported compliance cost of the state's Low Carbon Fuel Standard ("LCFS") program, and to pass those inflated costs on to California consumers through increased gasoline prices." FAC ¶ 1. According to Plaintiffs, this alleged conspiracy resulted in independent third-party retailers charging inflated prices for gasoline during the first five months of 2025. *Id.* ¶¶ 43, 46, 94. Plaintiffs assert three causes of action against Defendants for the violation of Section 1 of the Sherman Act, the Cartwright Act and California's Unfair Competition Law.

**B.    Regulatory Background**

Refiners operating in California must comply with LCFS regulations. *Id.* ¶ 32; Cal. Code Regs. tit. 17, § 95483. These regulations require refiners to ensure that their fuel mix meets annual carbon intensity (or CI) targets, often by blending lower-carbon fuels. FAC. ¶ 32; Cal. Code Regs. tit. 17, § 95484. If a refiner's fuel is above the applicable CI target, the refiner must obtain (or generate through other business activities) sufficient LCFS credits to cover the excess emissions. *Id.* Compliance is assessed annually, by comparing the annual CI target for a given year with a refiner's LCFS credit balance during the compliance period, which is January 1 through December 31 of each year. Cal. Code Regs. tit. 17, §§ 95485, 95491.

California law also imposes certain disclosure requirements on refiners. The Oil Refinery Cost Disclosure Act, SB 1322, requires each refinery operating in California to submit a monthly report to the CEC providing certain details about their wholesale gasoline transactions. Cal. Pub. Res. Code § 25355(b)(5) & (6). For gasoline sales through different wholesale channels—namely

unbranded and branded rack sales (physical locations where trucks pick up fuel); bulk sales; spot pipeline sales; and dealer tank wagon (DTW) sales (where gasoline is delivered to stations by truck)—refiners must separately report the quantity and average price, which vary by sales channel. Cal. Pub. Res. Code § 25355(b)(5); Whittaker Decl. Ex. 3.[2]  Refiner must also report "the volume-weighted fees or *estimated valuations* of costs embedded in all wholesale gasoline sales associated with the low-carbon fuel standard (LCFS)."  Cal. Pub. Res. Code § 25355(b)(6) (emphasis added). The CEC publishes summaries of these reports, including the average LCFS costs reported.  FAC ¶ 5.  These reports are aggregated and do not reveal what any individual refiner reported.  *See* Whittaker Decl. Ex. 3.

### C.    CARB's LCFS Amendments

On November 8, 2024, CARB's Board approved amending the LCFS regulations to impose more stringent (i.e., lower) annual CI targets.  FAC ¶ 32.  The stricter standard meant refiners would need to either purchase or generate more LCFS credits each year to offset the same volume of fuel sales, which makes LCFS compliance more costly.  *Id,* ¶¶ 32, 48.  On January 3, 2025, CARB submitted its proposed amendments to the annual CI targets to California's Office of Administrative Law ("OAL") for approval.  *Id.* ¶ 34.  Because "the annual compliance period is January 1 through December 31 of each year" and compliance is assessed on an annual basis, the new proposed CI standard was expected to apply to the *entire year* (i.e., all of 2025).  Cal. Code Regs. tit. 17, §§ 95485, 95491; *POET LLC v. State Air Resources Bd.*, 12 Cal. App. 5th 52, 59 (2017) ("Regulated parties must meet average carbon intensity requirements for the gasoline and diesel fuel they handle **each calendar year**.") (emphasis added). Plaintiffs do not allege there was

---

[2] Exhibits 2 and 3 to the Whittaker Declaration are documents incorporated by reference into the First Amended Complaint. *See, e.g., Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (under the incorporation by reference doctrine, a district court ruling on a motion to dismiss may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."); *Peterson v. Triplepoint Venture Growth BDC Corp.*, 2024 WL 5384678, at *2–3 (N.D. Cal. Aug. 7, 2024) (finding "publicly available" documents incorporated by reference in the complaint where "Plaintiff[s] rel[y] upon the exhibits, quote[] them, or refer[] to them in the Amended Complaint").  As to Exhibit 3 specifically, the publicly available 2025 data published by CEC is incorporated by reference into Plaintiffs' Amended Complaint because that data forms the very basis for Plaintiffs' claims, and is cited to directly or indirectly no less than eight times in the Amended Complaint.  FAC ¶¶ 1, 5, 35, 36, 41, 42, 47, 52.

any reason for Defendants to believe that CARB's costlier standard *would not* apply beginning in January 2025.

Further, a CARB-authored memo that Plaintiffs incorporate by reference into their FAC explains that the Oil Price Information Service (OPIS)—a leading benchmarking service that provides daily estimates of LCFS compliance costs—started publishing increased LCFS compliance cost estimates *in January 2025*. Whittaker Decl. Ex. 2.[3]  According to CARB, OPIS estimated the potential increased compliance costs of the amended regulation on the assumption that the amendments would apply January 1, 2025; CARB's memo does not suggest that these estimates were falsely inflated or otherwise question OPIS's assumption. *Id.*

On February 18, 2025, OAL unexpectedly rejected CARB's proposed amendments.  FAC ¶¶ 34, 48.  This created uncertainty about the applicable CI standard for 2025, which was not finally resolved until CARB resubmitted its LCFS amendments to OAL in May 2025 and OAL approved them on June 27, 2025.  *Id.*  The final regulation that was approved clarified that two different annual standards would apply to 2025, with the older CI target applying to transactions before July 1, 2025 and the new, amended CI target applying to transactions after July 1, 2025.  *See* Cal. Code Regs. tit. 17, § 95484.  In the original amendments proposed by CARB, there was no suggestion that the new, amended CI target would apply only to half of the year instead of the entire compliance period.  *Compare* Whittaker Decl. Ex. 1 (excerpted January 2025 CARB submission to OAL showing proposed revisions to Cal. Code Regs. tit. 17, § 95484 for 2025 compliance year) *with* 17 Cal. Code Regs. tit. 17, § 95484 at note b to Tables 1 and 2 (revised version of regulation stating that the new CI standards applied only to "fuel transactions" after "July 1, 2025").[4]

---

[3] For the reasons set out above, *supra* n.2, the July 16, 2025 CARB memorandum, Whittaker Decl. Ex. 2, is also incorporated by reference into the First Amended Complaint.  Exhibit 2 is cited in the Amended Complaint multiple times and extensively quoted as the very basis for Plaintiffs' theory that the "'reported increase in LCFS compliance cost pass-through'" was attributed to anticompetitive actions.  FAC ¶ 5 (quoting July 16, 2025 CARB memorandum); *see also id.* ¶ 82.

[4] The Court should take judicial notice of the existence and contents of Exhibit 1 to the Whittaker Declaration.  Courts "may take judicial notice of records and reports of administrative bodies." *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (internal quotation marks excluded).  Further, "[i]n general, websites and their contents may be judicially noticed." *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020); *see also Hansen Beverage Co. v. Innovation Ventures, LLC*, 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009) ("Information on government agency websites has often been treated as properly subject to judicial notice."); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th

GIBSON, DUNN & CRUTCHER LLP

6                MOTION TO DISMISS - 3:25-CV-10282-TLT

**D.    Plaintiffs' Claimed Injury**

Plaintiffs allege that Defendants conspired to report increased costs associated with the proposed amendments in the first five months of 2025, before the new CI requirements were formally approved by OAL and became effective. FAC ¶ 1. Plaintiffs allege that Defendants' reporting affected "wholesale prices and as a result gasoline prices [were] fixed and maintained at artificially high prices," and thus caused Plaintiffs to pay higher gasoline prices to third-party retailers as a result. *Id.* ¶¶ 1, 98. Aside from these conclusory allegations, the FAC does not contain details about the alleged conspiracy, who participated, or how the conspiracy caused Plaintiffs' claimed injury.

Among other things, the FAC does not specify what each Defendant reported to the CEC regarding LCFS compliance costs, relying instead on aggregated data. FAC ¶ 5. The FAC also does not explain how Defendants' *reports to the CEC* purportedly caused (wholesale, let alone retail) gasoline prices to rise. While the FAC concludes on "information and belief," that Defendants "incorporated their improperly inflated LCFS compliance costs into increased gas prices," the FAC does not contain any allegations about the gasoline prices charged by any of the Defendants. FAC ¶ 43(iii).

The FAC also does not allege any facts that explain how the "increased gas prices" charged by Defendants resulted in their alleged injury. Plaintiffs allege that they are *indirect purchasers*, which necessarily means that the allegedly inflated gasoline prices they are complaining about were charged by and paid to third party retailers. FAC ¶ 62. Plaintiffs do not allege that Defendants set the prices they paid such third parties. As Plaintiffs acknowledge, Defendants sell gasoline in the "wholesale market" and some, like the PBF entities, do not own or operate *any* retail gas stations. *See* FAC ¶¶ 19–24. The FAC contains no facts concerning the pricing decisions of third parties, including any allegedly increased LCFS costs that were passed on at each layer of intermediaries that exist between Plaintiffs and Defendants.

---

Cir. 2010). Exhibit 1 is available only on an archived version of CARB's website. *See* Whittaker Decl. ¶ 2. "Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Erickson v. Nebraska Mach. Co.*, 2015 WL 4089849, at *1 (N.D. Cal. July 6, 2015).

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a plaintiff's claim must be "plausible on its face" such that a court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Nor does a complaint survive dismissal if it is based on "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557.  Courts are not required to accept the veracity of "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged," or "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

Additionally, Rule 9(b)'s particularity requirement applies to federal and state law causes of action involving assertions of fraud or misrepresentations.  *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc*., 998 F.3d 397, 404 (9th Cir. 2021); *Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 164 F.4th 710, 731 (9th Cir. 2026) (applying Rule 9(b) to Sherman Act claim alleging misrepresentation to government as anticompetitive conduct).  To satisfy this standard, a plaintiff "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Depot, Inc. v. Caring for Montanans, Inc*., 915 F.3d 643, 668 (9th Cir. 2019) (citation omitted).

Challenges to Article III standing implicate a court's subject matter jurisdiction and therefore are properly raised under Rule 12(b)(1).  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "Federal courts are courts of limited jurisdiction," and "[i]t is to be presumed that a cause lies outside this limited jurisdiction," unless otherwise shown. *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994).

## IV.    ARGUMENT

Plaintiffs have not alleged a single viable claim here.  Plaintiffs' claims under the Sherman Act and the Cartwright Act fail because Plaintiffs do not specify what each Defendant allegedly did, much less plausibly allege that each Defendant participated in a conspiracy to inflate gasoline

prices by submitting allegedly false reports to the CEC. Plaintiffs also have not alleged facts demonstrating that they have standing to pursue their antitrust claims. Plaintiffs' UCL claim is equally defective because Plaintiffs have failed to allege any predicate acts that are actually unlawful or unfair and, in any event, cannot show that they relied on or were injured by any purported misrepresentations contained in Defendants' CEC reports. This action should be dismissed in its entirety.

## A.    Plaintiffs' Antitrust Claims Should Be Dismissed

Plaintiffs' Sherman and Cartwright Act Claims fail twice over. First, Plaintiffs come nowhere close to plausibly alleging an antitrust violation. Second, Plaintiffs lack both Article III and statutory standing to bring either of their antitrust claims.

### 1.    Plaintiffs Fail to State an Antitrust Conspiracy Claim

Alleging an antitrust conspiracy requires pleading "enough factual matter (taken as true) to suggest that an agreement was made." *D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1104 (9th Cir. 2024) (*quoting Twombly*, 550 U.S. at 556–57). That means "allegations plausibly suggesting (not merely consistent with) agreement" are required. *Twombly*, 550 U.S. at 557. To support such a plausible inference, a plaintiff must allege either "direct evidence of a conspiracy that requires no further inference" or "circumstantial evidence in the form of parallel conduct among competitors and certain plus factors suggesting a conspiracy." *D'Augusta*, 117 F.4th at 1104. "[Courts] cannot . . . infer an anticompetitive agreement when factual allegations just as easily suggest rational, legal business behavior." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1130 (9th Cir. 2015).

Here, Plaintiffs do not purport to have any direct evidence—there is no "smoking-gun evidence that establishes, without requiring any inferences the existence of a conspiracy." *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 822 (9th Cir. 2023) (cleaned up). Plaintiffs instead attempt to rely on circumstantial evidence, but they have pleaded nothing beyond "labels and conclusions" that Defendants engaged in parallel conduct, and none of Plaintiffs' alleged plus factors tend to exclude the possibility that Defendants acted rationally, lawfully and independently in response to uncertainties surrounding a change in regulations that they commonly faced.

GIBSON, DUNN &
CRUTCHER LLP

**a)      Plaintiffs' Alleged Facts Undermine Any Inference of Conspiracy**

"Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008).  Here, Plaintiffs' allegations revolve around amendments to the LCFS standard that were made by CARB.  While Plaintiffs admit that these amendments did increase LCFS costs, FAC ¶ 48, they contend that because the amendments did not ultimately take effect until July 2025, there was no reason for reported costs to increase from January to May 2025. *Id.* ¶ 41.  But elsewhere, they acknowledge the reason aggregate reported LCFS costs would have increased in early 2025.

As explained in Section II, the proposed amendments to the LCFS regulations at issue were designed to increase the stringency of the carbon intensity target for years 2025 and beyond. *See supra* § II.C.  Because CI targets are set on an annual basis, the new target for 2025 was expected to apply to the entire compliance year, from January 1, 2025 to December 31, 2025. *Id.*; *see also POET*, 12 Cal. App. 5th at 59 (explaining that compliance with LCFS standards is assessed annually based on the "carbon intensity value set as the standard for that year"); Cal. Code Regs. tit. 17, §§ 95485, 95491.  That this was the prevailing view in the industry is evident from the LCFS compliance cost estimates published by OPIS—a third party that Plaintiffs do not contend had any involvement in the alleged conspiracy.  Whittaker Decl. Ex. 2 at 2.  As CARB's memo incorporated into the FAC explains, OPIS "assumed" the amended CI target for 2025 would start applying in January 2025 and, thus, increased its published LCFS compliance cost estimates for the first five months of 2025. *Id.*  There is no suggestion in the CARB memo that OPIS's assumption was unreasonable or had some nefarious intent. *Id.*  Further, as CARB acknowledges, OPIS provides its LCFS cost estimates as a subscription service to the industry. *Id.*  Defendants could have relied on the published OPIS estimates of LCFS compliance costs in connection with their CEC reporting independently without any need for a conspiracy; Plaintiffs do not allege otherwise.

Subsequently, OAL unexpectedly rejected CARB's initial proposal, which created uncertainty about the applicable CI standard for 2025. *See supra* § II.C.  It was not until June 2025 when the final amendments were approved that it became certain that CARB would use two annual

CI standards for 2025, with the old standard applying to the first two quarters and the amended standard applying to the last two quarters. *Id.* The unusual regulatory timeline—not some convoluted conspiracy—explains why aggregate reported LCFS costs increased from January to May 2025.[5] Indeed, Plaintiffs allege that aggregate reported LCFS costs *went down* in June, before going back up in July when the lower target took effect. FAC ¶ 48.

That Plaintiffs' FAC acknowledges these obvious alternative explanations is alone grounds for dismissal. *See Twombly*, 550 U.S. at 567–68 (upholding dismissal where parallel conduct was "not suggestive of a conspiracy" because "we have an obvious alternative explanation" for the alleged noncompetition); *D'Augusta*, 117 F.4th at 1104 (affirming dismissal where reduced oil production likely resulted from decrease in demand during COVID-19, not conspiracy).

### b) Plaintiffs' Group Pleading Is Insufficient to Allege Parallel Conduct

Even if Plaintiffs had not pled themselves out of court by acknowledging the obvious alternative explanation for Defendants' alleged conduct, their claim fails because Plaintiffs have not alleged any parallel conduct by the Defendants. "The requirement that plaintiffs allege nonconclusory facts means that plaintiffs cannot plead merely parallel conduct and allege conspiracy." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194, n.6 (9th Cir. 2015). Rather, plaintiffs must plead specific facts about each Defendant's supposed involvement: "who, did what, to whom (or with whom), where, and when." *Id.* (citing *Kendall*, 518 F.3d at 1048. Plaintiffs do not meet this standard.

For the vast majority of their allegations, Plaintiffs vaguely refer to "Defendants" without specifying to which Defendant the allegation applies. *See, e.g.,* FAC ¶¶ 38 (alleging that "Defendants'" volume weighted LCFS compliance costs showed a dramatic increase), 41 (alleging

---

[5] Plaintiffs also ignore the possibility that LCFS compliance costs for refiners may have actually increased during the first five months of 2025. While Plaintiffs claim that the increased LCFS reported costs were "inexplicable and unjustified" because there was no surge in LCFS credit prices during that time, FAC ¶ 39, it is not just the price, but also the volume of credits that determines LCFS costs. If more credits were purchased in the first five months of 2025 to meet the new, more stringent CI standard—which at the time was expected to apply to the entire 2025 compliance period—reported LCFS costs would naturally increase. But Plaintiffs do not allege anything about the volume of LCFS credits that each Defendant purchased, precluding the inference that the increased reported LCFS costs were unwarranted.

that "Defendants" started charging consumers for a regulatory cost that was not in effect), 45 (alleging that "Defendants" gave the appearance their increased prices were legitimate).  Such "[a]llegations about the defendants as a general collective bloc, or generalized claims of parallel conduct, must be set aside as impermissible group pleading."  *In re Mexican Government Bonds*, 412 F. Supp. 3d 380, 388 (S.D.N.Y. 2019); *accord D'Augusta*, 117 F.4th at 1104 (allegations that "major oil companies" reduced their oil productions insufficient to plausibly allege a conspiracy); *City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*, 92 F.4th 381, 396 (2d Cir. 2024) ("failure to identify the involvement of particular defendants" is "a basic pleading defect").  "Simply using the global term 'defendants' to apply to numerous parties without any specific allegations that would tie each particular defendant to the conspiracy is not sufficient."  *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 312 (D.N.J. 2004); *accord In re Optical Disk Drive Antitrust Litig.*, 2014 WL 3378336, at *4 (N.D. Cal. July 10, 2014) (a plaintiff must "include allegations specific to each defendant alleging that defendant's role in the alleged conspiracy, and must make allegations that plausibly suggest that each Defendant participated in the conspiracy") (cleaned up).

Plaintiffs take the same approach with respect to the allegation that Defendants reported LCFS costs increased: they allege that "all five Defendants" inflated their LCFS cost reports to the CEC, FAC ¶ 44, but that allegation is based on *aggregated* data published by the CEC that reveals nothing about what any individual refiner reported.  *See* Whittaker Decl. Ex. 3.  For example, the data Plaintiffs rely on for January 2025 is excerpted below[6]:

| Aggregated Data Reported - January 2025 | | | | |
| --- | --- | --- | --- | --- |
| Product | Volume (Thousand Gallons) | Price (Dollars per Gallon) | LCFS (Dollars per Gallon) | Cap and Trade (Dollars per Gallon) |
| Crude Domestic | 586,943 | $1.91 | N/A | N/A |
| Crude Foreign | 860,268 | $1.88 | N/A | N/A |
| Unbranded Rack | 317,355 | $2.14 | $0.19 | $0.25 |
| Branded Rack | 44,222 | $2.49 | $0.19 | $0.25 |
| Bulk | 274,995 | $2.13 | N/A | $0.00 |
| Spot Pipeline | 122,489 | $2.22 | N/A | $0.00 |
| Dealer Tankwagon | 277,512 | $2.56 | $0.19 | $0.25 |
| Internally Priced Sales | 55,600 | $2.46 | $0.19 | $0.25 |

---

[6] *See* Whittaker Decl. Ex. 3.

This type of "industry-wide data" does not indicate how the individual Defendants in this case acted and "that type of information is vital to pleading parallel conduct." *In re Domestic Airline Travel Antitrust Litig.*, 691 F. Supp. 3d 175, 197, n.17 (D.D.C. 2023) (cleaned up).  Unsurprisingly, courts routinely reject average or aggregated data as evidentiary facts supporting parallel conduct allegations.  *See City of Pontiac*, 92 F.4th at 400 (relying on average data does not suffice to allege parallel pricing, as averages "can flatten or hide trends that might tell a different story, and they can be finessed by shifting the time periods being averaged") (cleaned up); *see Oliver v. SD-3C LLC*, 2016 WL 5950345, at *6–7 (N.D. Cal. Sep. 30, 2016) (holding that industry-wide average data did not suffice as an allegation of parallel conduct); *Mexican Gov't Bonds*, 412 F. Supp. 3d at 389 (rejecting plaintiffs' allegations that rely on averages and medians "that obscure any given Defendant's contribution to an observed trend").

Further, despite professing to allege a conspiracy among Defendants to report inflated LCFS costs and maintain wholesale gasoline prices at artificially high levels, FAC ¶¶ 97–98, Plaintiffs do not allege any parallel wholesale gasoline pricing by Defendants.  In fact, Plaintiffs do not plead any wholesale price offered by any Defendant at any time.  Instead, Plaintiffs baldly assert in a single paragraph based "on information and belief" that "Defendants… incorporated their improperly inflated LCFS compliance costs into increased gas prices." FAC ¶ 43(iii).  This conclusory assertion leaves the Court no basis to infer that the individual Defendants adopted parallel wholesale price increases.  And while Plaintiffs do allege that *average retail prices* increased during the first five months of 2025, FAC ¶ 43, that gets them no further, as Plaintiffs do not allege that Defendants set those prices (nor could any parallel action be inferred from *averages* of the *thousands* of different prices set by retail stations in the state).

Plaintiffs' failure to plead any specific allegations about individual Defendants is particularly fatal here given that Plaintiffs are asserting a conspiracy to fraudulently misrepresent LCFS costs to the CEC.  *See* FAC ¶¶ 10, 45, 75, 95, 97.  Such allegations must satisfy Rule 9(b)'s heightened pleadings standard, which requires Plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 164 F.4th 710, 731 (9th Cir. 2026) (applying Rule 9(b) pleading standard to

allegations that defendant made false representation to the government to unlawfully acquire monopoly power); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) (explaining that Rule 9(b) applies to any "allegations of fraud" in a complaint alleging "some fraudulent and some non-fraudulent conduct"). Plaintiffs' conclusory allegations, stated in the form of group pleading, are woefully inadequate to meet the demands of Rule 9(b) or Rule 8.

Because the FAC fails to allege even the most basic information about what each Defendant supposedly did, Plaintiffs have failed to allege parallel conduct as a matter of law. *D'Augusta*, 117 F.4th at 1104. This alone requires dismissal of Plaintiffs' antitrust claims. *Id.*; *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 691 F. App'x 389, 391 (9th Cir. 2017).

### c) Plaintiffs' Alleged Plus Factors Do Not Tend to Exclude Independent Action

Given Plaintiffs' failure to plead parallel conduct, the Court need not consider whether Plaintiffs adequately pleaded "plus factors" suggesting an illegal agreement. *SourceAmerica*, 691 F. App'x at 391 ("'Plus factors' are relevant only if the complaint adequately alleges parallel conduct among the defendants."). Even if the Court were to consider the "plus factors" Plaintiffs assert, they do not move Plaintiffs' conspiracy claims "across the line from conceivable to plausible." *Musical Instruments*, 798 F.3d at 1193 (quoting *Twombly*, 550 U.S. at 570). Plaintiffs' plus factor allegations "are either insufficient or independently explained by rational business decisions on the part of [Defendants] and therefore do not exclude the possibility that [Defendants'] actions were the result of independent conduct." *Fonseca v. Hewlett-Packard Co.*, 2020 WL 4596758, at *9 (S.D. Cal. Aug. 11, 2020), aff'd, 2021 WL 4796540 (9th Cir. Oct. 14, 2021).[7]

---

[7] California recently added Cal. Bus. & Prof. C. § 16756.1, which provides that Cartwright Act claims "shall not be required to allege facts tending to exclude the possibility of independent action." However, "pleading standards are considered procedural" under the *Erie* doctrine and therefore a state's pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law. *PAI Corp. v. Integrated Sci. Sols., Inc.*, 2007 WL 1229329, at *4 (N.D. Cal. Apr. 25, 2007). Under federal antitrust pleading standards, Plaintiffs' Cartwright Act claim must be supported by specific factual allegations that tend to exclude the possibility of independent action. *See GreenCycle Paint, Inc. v. PaintCare, Inc.*, 250 F. Supp. 3d 438, 447 (N.D. Cal. 2017) ("[W]here a plaintiff's [Cartwright Act] allegations are stuck in 'neutral territory,' i.e., they do not tend to exclude the innocent explanation, such allegations fall short of what *Iqbal* and *Twombly* require."). Even erroneous application of state standards in federal court would result in a failure of the claim as there is no parallel conduct; the new state rule also cannot possibly mean that mere parallel pricing is enough to put any case into antitrust discovery, no matter how implausible the alleged conspiracy.

GIBSON, DUNN & CRUTCHER LLP

Here, none of Plaintiffs' alleged plus factors—(1) shared motive, (2) opportunities to conspire, (3) action against independent self-interest, (4) unexplained price increase, and (5) prior gas price spikes, FAC ¶¶ 54–59—is sufficient to raise an inference of a conspiracy.

**Shared Motive.**  Plaintiffs allege that Defendants shared the motive to increase profits, which facilitated the collusion.  FAC ¶ 58.  But "any firm that believes that it could increase profits by raising prices has a motive to reach an advance agreement with its competitors." *Musical Instruments*, 798 F.3d at 1194.  "Thus, alleging 'common motive' to conspire simply restates that a market is interdependent (i.e., that the profitability of a firm's decisions regarding pricing depends on competitors' reactions)." *Id.* at 1195.  "Interdependence, however, does not entail collusion, as interdependent firms may engage in consciously parallel conduct through observation of their competitors' decisions, even absent an agreement." *Id.*  Accordingly, plus factors that merely reflect interdependence do not make a conspiracy more likely than unilateral action.

**Opportunities to Conspire.**  Plaintiffs also allege that Defendants, as a tight-knit group of industry players, have many opportunities to communicate.  FAC ¶ 57.  Again, that simply describes any interdependent market.  Moreover, Plaintiffs allege no facts reflecting any such communications among Defendants.  Vague allegations of inter-competitor communications do not raise an inference of conspiracy. *In re Citric Acid*, 191 F.3d 1090, 1103 (9th Cir. 1999); *Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) ("Communications between competitors do not permit an inference of an agreement to fix prices unless those communications rise to the level of an agreement, tacit or otherwise.") (cleaned up).

**Actions Against Interest.**  Plaintiffs also allege that unilaterally overstating costs and raising prices would be against each Defendant's self-interest unless Defendants expected their rivals to do the same, which Plaintiffs contend implies an agreement.  FAC ¶ 56.  As an initial matter, this conclusory allegation is not only unsupported but also contradicted by other facts alleged or incorporated in the FAC—any purported cost increases in January through May 2025 were due to CARB's initial plan to make its amended (and more costly) standard applicable to the entire year.  In any event, "a price increase is no more suggestive of collusion than it is of any other potential cause." *Musical Instruments*, 798 F.3d at 1197.  This is especially true in California's

gasoline industry, which Plaintiffs allege is "oligopolistic" (in other words, "interdependent").  As the Ninth Circuit has held, "an action that would seem against self-interest in a competitive market may just as well reflect market interdependence giving rise to conscious parallelism." *Id.* at 1195. And companies operating in an interdependent market "can risk being the first to raise prices" even without a preceding agreement.  *Id.*  Thus, even if Plaintiffs had included well-pleaded allegations that each refiner raised its prices, no conspiracy could be inferred on that basis.

**Unexplained Price Increases And Prior Price Increases.**  Plaintiffs' allegations of unexplained price increases that depart from national trends and prior gas price spikes also do not suffice as plus factors for multiple reasons.  FAC ¶¶ 55, 59.  First, as noted, a price increase alone does not suggest collusion.  *Musical Instruments*, 798 F.3d at 1197.  And in any event, Plaintiffs have alleged no facts suggesting that Defendants set the retail prices Plaintiffs paid.  Further, Plaintiffs' own allegations identify multiple other factors that have historically driven California retail gasoline prices to be higher than the national prices as well, including special blending requirements and geographic isolation.  FAC ¶¶ 10, 59.  At bottom, neither the historical price spikes nor the January 2025 increase in retail gasoline prices make a conspiracy among refiners more likely.

Whether analyzed individually or together, none of the plus factors Plaintiffs identified suggest that Defendants conspired to report inflated LCFS costs and pass them down to consumers.

### d)     Plaintiffs' Alleged Conspiracy Makes No Economic Sense

Plaintiffs' conspiracy claims should also be dismissed because they are illogical and nonsensical for multiple reasons. *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co*., 141 F.3d 947, 952 (9th Cir. 1998) ("Antitrust claims must make economic sense."); *Cascades Computer Innovation LLC v. RPX Corp.*, 2013 WL 316023, at *11 (N.D. Cal. Jan. 24, 2013) ("Where the . . . alleged conspiracy makes no economic sense, the claim must be dismissed.").

First, Plaintiffs do not explain why refiners would be motivated to enter into a convoluted conspiracy to raise gasoline prices by inflating LCFS cost reports to the CEC when the refiners could raise gasoline prices directly, without risking discovery by CEC regulators reviewing the reports.  Refiners are not, of course, required to raise LCFS costs to raise gasoline prices, nor is

GIBSON, DUNN &
CRUTCHER LLP

16     MOTION TO DISMISS - 3:25-CV-10282-TLT

there any requirement that refiners break down components of their prices to customers and justify "that their increased prices were legitimately tied to higher regulatory costs." FAC ¶¶ 5, 45.  And even if Defendants wanted to attribute prices increases in January through May 2025 to LCFS compliance costs, it would not make sense to use the SB 1322 reports to do so given that Plaintiffs allege the CEC did not publish aggregated data from those reports *until May 2025*.  FAC ¶ 5.

Second, Plaintiffs do not explain why or how Defendants would conspire to pass on increased LCFS compliance costs to consumers.  Plaintiffs are indirect purchasers—they did not buy their gasoline from Defendants.  FAC ¶ 62.  Even assuming as true that Plaintiffs paid more for gasoline during the first five months of 2025, it was the third-party retailers that set those prices and were enriched by them.  *See Moore v. Mars Petcare US, Inc.*, 820 F. App'x 573, 576 (9th Cir. 2020) (unpublished) ("The main problem with Plaintiffs' conspiracy theory, however, is that they do not explain or account for the role of other players in the market.").  Plaintiffs allege no mechanism by which Defendants could ensure that their wholesale customers would pass on increased LCFS costs to their customers and ultimately to end consumers.  Indeed, the alleged increase in retail gasoline prices in January 2025 far exceeded and appears to bear no connection to the purported "phantom" LCFS costs that Defendants allegedly started including in their CEC reports.  FAC ¶¶ 43.  That is consistent with CARB's conclusion in its July 2025 memo that refiners' LCFS costs are not a significant driver of retail fuel prices in California.  Whittaker Decl. Ex. 2 at 4.

* * * * *

Plaintiffs fail to allege any circumstantial evidence of conspiracy, ignore obvious explanations and pursue an implausible theory that makes no economic sense.  Their antitrust claims must be dismissed for failure to plausibly plead an unlawful conspiracy.

### 2.    Plaintiffs Lack Article III and Antitrust Standing

Plaintiffs' antirust claims must also be dismissed for lack of standing.  Article III of the Constitution requires that a plaintiff have standing to assert claims in federal court.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  This threshold requirement applies with equal force to Plaintiffs' federal and state law claims.  *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998,

1022 (9th Cir. 2004); *see also Guthrie v. Rainbow Fencing Inc.,* 113 F.4th 300, 304 (2d Cir. 2024). Additionally, Plaintiffs must demonstrate that they also meet the more demanding statutory standing for their antitrust claims.  Plaintiffs do not and cannot establish either.

**a)      Plaintiffs Fail to Allege Traceability or Redressability Required for Article III Standing**

To establish Article III standing, an antitrust Plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *accord Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 907 (N.D. Cal. 2019).  Plaintiffs fail to adequately allege traceability and redressability.

**1. Plaintiffs do not plausibly plead an injury traceable to the challenged conduct.**  "A key component of Article III standing is 'traceability, i.e., a causal connection between the injury and the actions' about which a plaintiff complains."  *Sud v. Costco Wholesale Corp*., 229 F. Supp. 3d 1075, 1081 (N.D. Cal. 2017).  To plead traceability, "indirect purchaser complaints must include allegations (i) defendants overcharged direct purchasers and (ii) some or all of that overcharge was passed on to indirect purchasers through each of the various intermediate levels of the distribution chain."  *Jones*, 400 F. Supp. 3d at 907; *accord In re Hard Disk Drive Suspension Assemblies Antitrust Litig*., 2020 WL 6270948, at *2 (N.D. Cal. Oct. 23, 2020) (same); *In re Optical Disk Drive Antitrust Litigation,* 303 FRD 311, 324 (N.D. Cal. 2014) (same).

Plaintiffs do not satisfy their burden here because they include no allegations about overcharges to direct purchasers or the amount the direct purchasers or subsequent intermediaries supposedly passed onto Plaintiffs.  *See Hard Disk Drive*, 2020 WL 6270948, at *3 (dismissing claims by indirect purchasers where "the pleadings [did not] contain facts setting forth directly, or from which a reasonable inference can be drawn, that each participant in the chain necessarily passed on the asserted overcharge to the next participant.").  At most, Plaintiffs allege in a conclusory fashion that refiners' aggregated LCFS compliance costs for their wholesale transactions *reported* to the CEC increased by "~5-8" cents per gallon between January and May 2025 and that during the same time period retail "gas prices" in California increased by an average

GIBSON, DUNN & CRUTCHER LLP

of almost 18 cents per gallon while gas prices nationally decreased.  FAC ¶ 55; *see also id.* ¶ 76 (alleging that Plaintiffs were overcharged 5 to 8 cents due to Defendants' conduct).  Plaintiffs do not explain how LCFS costs reported to the CEC impact prices at the various levels of the distribution chain.  And Plaintiffs allege *nothing* about each Defendant's *actual* wholesale prices— they do not contend they went up by 5 to 8 cents, or went up at all, and they do not address how wholesale prices changed through each of the varied distribution channels.  *Supra* § IV.A.1.  Nor do Plaintiffs include any allegations explaining how any purported cost increase at wholesale was passed on at retail in the gasoline purchases they made.  In sum, the FAC does not allege any well-pleaded facts linking purported increases in Defendants' LCFS costs reported to the CEC to the retail prices set by independent third parties.  Plaintiffs thus fail to satisfy Article III's traceability requirement.

**2. Plaintiffs' injunctive relief claims fail because they allege no redressable injury.** Plaintiffs fail to plead an injury redressable by injunctive relief for two reasons.  First, they do not plausibly allege a future injury redressable by an injunction at all.  Second, even if they pled such possible future injury, the existence of independent third parties between the Defendants upon whom any injunction would act and the Plaintiffs seeking relief renders any possible redress implausible and speculative.

*First*, as to **prospective injunctive relief** to prevent future violations of LCFS reporting requirements, the alleged violations have already transpired and there is no plausible threat of future violations or harm.  FAC ¶ 77(a), (d).  *See, e.g.*, *Benton v. CVS Pharmacy, Inc.*, 604 F. Supp. 3d 889, 893 (N.D. Cal. 2022) (no Article III standing for injunctive relief where plaintiff failed to allege future injury from prior alleged misrepresentation).  Plaintiffs offer only conclusory allegations, *see* FAC ¶ 49, and do not plausibly allege a threat of future harm or an ongoing violation.  *See e.g.*, FAC ¶¶ 44, 48, 62, 94 (claiming conduct, purchases, and overcharge from January through May 2025).  Nor could they, as Defendants could not prematurely report LCFS costs associated with proposed amendments since those regulations have now been in effect for over six months.  *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1142 (9th Cir. 2025) (prior conduct "do[es] not pose any current or future threat of anticompetitive harm").

GIBSON, DUNN &
CRUTCHER LLP

19    MOTION TO DISMISS - 3:25-CV-10282-TLT

Plaintiffs lack standing as to **retrospective injunctive relief** to require Defendants to correct prior submissions too, *see* FAC ¶ 77(b), (c), (e), because they do not explain how the persistence of prior allegedly inaccurate submissions harms them.  *See Butler v. Porsche Cars N. Am., Inc.*, 2016 WL 4474630, at *8 (N.D. Cal. Aug. 25, 2016) (dismissing injunctive relief claim for lack of standing because it would not redress alleged injuries).  Plaintiffs do not allege that old reports elevate the price of gasoline and they have identified no harm that flows to them from allegedly uncorrected LCFS reports persisting with CARB.  Nor do they explain how public notices would remedy past alleged overpayments.  The remedy for alleged overpayment would be monetary damages, not injunctive relief.  *Victorino v. FCA US LLC*, 2018 WL 2455432, at *20 (S.D. Cal. June 1, 2018) ("monetary damages is the appropriate form of damages" where plaintiffs' claimed injury was "overpayment of the purchase price"); *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) ("Plaintiffs do not explain why [they] could not sufficiently be 'made whole' by monetary damages.").  Because neither a prospective nor a retrospective injunction would redress Plaintiffs' alleged harm, the Court should deny both.

*Second*, even if Plaintiffs had pleaded a future injury, Plaintiffs fail to plausibly plead redressability because their theory of harm depends on the speculative actions of third parties.  "[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 560–61 (cleaned up).  Accordingly, redressability is lacking where, as here, remedying the alleged harm depends crucially on the actions of independent third parties.  *See, e.g.*, *Fernandez v. Brock*, 840 F.2d 622, 628 (9th Cir. 1988).  Plaintiffs' theory necessarily runs through third-party gasoline retailers who set retail gasoline prices outside Defendants' control.  *Infra* § IV.A.b.  It is therefore "speculative at best" whether enjoining the alleged conduct by *refiners* would afford Plaintiffs—as *indirect purchasers* who buy from third parties—relief.  *Fernandez*, 840 F.2d at 627; *see also Levine v. Vilsack*, 587 F.3d 986, 997 (9th Cir. 2009) (no standing for declaratory and injunctive relief because redress would depend on actions of independent actors, and "any pleading directed at the likely actions of third parties . . . would almost necessarily be conclusory and speculative"); *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1228 (9th Cir. 2008) (no redressability for particular injunctive relief because the

GIBSON, DUNN &
CRUTCHER LLP

20          MOTION TO DISMISS - 3:25-CV-10282-TLT

claim hinged on "discretionary efforts" by third-party agencies); *Bakay v. Apple Inc.*, 2024 WL 3381034, at *7 (N.D. Cal. Jul. 11, 2024) (no Article III standing for injunctive relief because the plaintiffs' "reliance on [] third parties is too speculative") *aff'd* 2025 WL 3012822, at *1–*2.

### b)   Plaintiffs Lack Antitrust Standing

Neither Congress nor the California legislature intended to allow every person tangentially affected by an antitrust violation to sue. Instead, both the federal and California antitrust laws limit antitrust standing only to those plaintiffs whose injuries were proximately caused by Defendants' alleged violation. *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 536 (1983); *Morrison v. Viacom, Inc.*, 66 Cal. App. 4th 534, 548 (1998) ("The plaintiff in a Cartwright Act proceeding must show that an antitrust violation was the proximate cause of his injuries.") (quoting *Kolling v. Dow Jones & Co.*, 137 Cal. App. 3d 709, 723 (1982)); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 144 (2d Cir. 2021) (holding that Cartwright Act claim must be dismissed for lack of proximate cause because "California legislature, like Congress, was familiar with the common-law rule of proximate cause, and California courts will not assume that the legislature intended to displace it sub silentio") (cleaned up).

The Supreme Court established five factors to assess whether a plaintiff is the proper party to enforce an antitrust violation: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455 (9th Cir. 2021). These same factors are used to evaluate standing under the Cartwright Act. *Wholesale Elec. Antitrust Cases I & II*, 147 Cal. App. 4th 1293, 1309 (2007); *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 (1995); *Ahn v. Stewart Title Guar. Co.*, 93 Cal. App. 5th 168, 179–180 (2023).[8] Each of these factors demonstrate that Plaintiffs lack antitrust standing.

---

[8] *See also Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000) (applying federal antitrust standing factors to Cartwright claim while acknowledging that "California law affords standing more liberally than does federal law"); *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 121 (2d Cir. 2021) (applying AGC factors to a Cartwright Act claim).

GIBSON, DUNN &
CRUTCHER LLP

**1. Plaintiffs fail to allege a cognizable antitrust injury**. A plaintiff *must* demonstrate a cognizable antitrust injury to possess antitrust standing. *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Ca.*, 190 F.3d 1051, 1054–55 (9th Cir. 1999). "While the Cartwright Act indeed allows broader standing in a sense by letting indirect victims sue…the antitrust injury requirement remains the same across state and federal law." *Ahn*, 93 Cal. App. 5th at 180, n.7.

Not every injury resulting from unlawful economic conduct is an antitrust injury; only injuries that flow from that which makes a defendant's conduct unlawful qualify as antitrust injuries. *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 902 (9th Cir. 2008). Generally, antitrust injury must be alleged "in the market where competition is allegedly being restrained." *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020). Where, as here, a plaintiff does not participate directly in the market that was allegedly restrained, the plaintiff must show that it "is the direct victim of a conspiracy, or the actual means by which the defendants' allegedly anticompetitive conduct is carried out." *In re DRAM Antitrust Litig.*, 536 F. Supp. 2d 1129, 1139–40 (N.D. Cal. 2008). "In such cases, there is an inextricable linking of a plaintiff's injury with the anticompetitive conduct in question." *Id.* Plaintiffs cannot establish antitrust injury as a matter of law because they do not participate in the alleged market that was restrained and cannot link their injury to Defendants' conduct as required.

Plaintiffs' conspiracy theory presents exactly the sort of market mismatch between their alleged injury and the alleged conduct that the law does not allow. Plaintiffs allege an injury of "5–8 cents per gallon overcharge" in the "market for [CARB-compliant] gasoline sold in California." FAC ¶¶ 60, 77, 88. This alleged injury necessarily occurs in the "retail" gasoline market where indirect purchaser Plaintiffs purchased gasoline from third-party gas stations. *See id.* ¶¶ 82, 87, 98(ii) (alleging price impacts of *retail* gasoline prices); *see also id.* ¶¶ 13–18, 62 (describing each plaintiff as an indirect purchaser who bought gasoline from third-party retailer). But that is not the market where Plaintiffs allege an unlawful restraint. According to Plaintiffs, Defendants conspired to inflate LCFS costs in their reports to the CEC, which relate, at most, to *wholesale transactions*. Cal. Pub. Res. Code § 25355(b)(6). Although Plaintiffs avoid details in their complaint about any market, they admit that all Defendants *supply* retail gasoline stations,

including by selling gasoline in undefined "wholesale markets." *See id.* ¶¶ 19–23. However this unspecified wholesale market is defined, it is not the retail market in which Plaintiffs allege injury. *Cf., e.g., Persian Gulf Inc. v. BP West Coast Products LLC et al.*, 632 F. Supp. 3d 1108, 1123 (S.D. Cal. 2022); *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1432 (9th Cir. 1995) (addressing claims directed at conduct in a "retail gasoline market").

*Bakay v. Apple Inc.* is instructive. In that case, the court dismissed plaintiffs' claims in part for failure to plead a viable antitrust injury because the alleged injury—supracompetitive smartphone prices in an alleged smartphone market—did not occur in the same market as the alleged conduct, which occurred in a "distinct," unalleged mobile browser market. 2024 WL 3381034, at *7 (no antitrust standing because alleged inflated prices occurred in a "distinct market" from the alleged restraint). Here, Plaintiffs allege anticompetitive conduct in the alluded to *wholesale* market(s) for gasoline, but allege an injury in the downstream *retail* market for gasoline.

Nor do Plaintiffs allege any facts that plausibly suggest that they were the direct victims of the purported conspiracy or that they were used as a means to carry out the alleged conspiracy. According to Plaintiffs' theory, Defendants' wholesale customers would be the direct victims of the purported conspiracy and the SB 1322 reports were used as means to carry out the purported conspiracy.

**2. Plaintiffs' alleged injury is too attenuated from the alleged conduct.** "To assess the directness of the plaintiff's injury, the court looks to the chain of causation between plaintiff's injury and the alleged restraint in the market." *Knevelbaard*, 232 F.3d at 989 (cleaned up). Here, too many speculative links exist between Defendants' alleged violation and Plaintiffs' claimed injury to support antitrust standing.[9] Plaintiffs allege Defendants agreed to *report* to the CEC "inflate[d]" LCFS compliance costs for a five-month period. FAC ¶ 44. But the FAC includes no factual allegations indicating how this impacted Defendants' actual wholesale prices. Some

[9] To be sure, the fact that Plaintiffs are indirect purchasers does not categorically preclude them from having antitrust standing under the Cartwright Act. *In re DRAM*, 516 F. Supp. 2d at 1091. But it does not follow that "indirect purchaser status is itself sufficient under California law to establish antitrust standing, or that California law necessarily eschews the general test for antitrust standing as set forth in *AGC*." *Id.* Here, the directness factor weighs against standing because Plaintiffs' claimed injury is too remote from Defendants' conduct and speculative in nature, not because of their status as indirect purchasers.

refiners may have raised their wholesale prices, while others decreased them and still others maintained them the same. Plaintiffs allege no facts suggesting which action each of the Defendants took. Thus, any connection between the alleged *reporting* conspiracy and actual wholesale gasoline prices is pure speculation.

And there is more attenuation because Plaintiffs allege that they were injured at the retail level. Plaintiffs' sole conclusory allegation—on information and belief—that Defendants passed on the increased LCFS costs to consumers simply ignores the complex, multi-step distribution chain for gasoline in California. *See, e.g.*, *Bakay*, 2024 WL 3381034, at *6 (rejecting causal chain as too indirect when it included multiple steps between the alleged conduct in one market, and the alleged injury in another, downstream market). Plaintiffs likewise ignore that defendants have varying business models; this allegation is particularly non-sensical, for example, for the PBF entities, which do not own or operate retail stations, calling into question the entire theory. And there may be multiple intermediary distributors between Defendants and Plaintiffs, depending on the exact distribution channel gasoline passed through. *Supra* § IV.A.2.a. These third parties may increase, decrease or maintain their retail prices for a variety of reasons, including a particular retailer's channel of wholesale gasoline purchase, *supra* § II.B (describing various wholesale distribution channels), and whether the local competitive conditions of each retailer, *cf.* Whittaker Decl. Ex. 2 at 4 ("An independent assessment conducted demonstrated that the LCFS program price effect at the pump is not a significant driver of retail fuel prices in California.").

Plaintiffs also lack standing because "there are clearly other motivated plaintiffs" more directly harmed who will be "efficient enforcers of antitrust laws." *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1124 (9th Cir. 2008); *In re American Express Anti-Steering Litig.*, 19 F.4th 127, 144 (2d Cir. 2021) (merchants who did not accept American Express lacked standing because they were too indirectly harmed); *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1815 (1995) ("The party directly injured by Waste Management's conduct was not plaintiff, an individual, but Vinci Enterprises, Inc., a corporation. The remedy lies with the corporation, not the shareholder, even if the injured shareholder is the sole shareholder."). Plaintiffs reference numerous retail gasoline outlets that sit between the refiner-defendants and customers,

each of which are better situated to enforce any alleged antitrust violation. *See, e.g.*, FAC ¶¶ 13–18 (noting among others Union 76, Shell, Arco, Costco, Conserv, Circle K, Von's, and 7-Eleven gas stations). Their existence weighs against conferring standing to Plaintiffs who are several steps removed.

**3. Plaintiffs' claimed damages are too speculative and create a high risk of duplicative recovery and complex apportionment.** The remaining factors also weigh heavily in favor of denying standing here. As explained above, Plaintiffs allege a speculative and multi-step conspiracy theory that starts with oil refiners conspiring to file inflated cost reports to the CEC, and ends with inflated retail gasoline prices. FAC ¶¶ 35–36, 38–44, 46; *supra* § IV.A.2.a. But this theory piles "speculation upon speculation," *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 462 (9th Cir. 2021) (Bumatay, J., concurring), and would make any measure of damages too speculative to support antitrust standing. A measure of injury is too speculative where it necessarily depends on "independent factors." Here, Plaintiffs' theory depends on the Defendant-refiners passing through their reported LCFS costs to their wholesale customers and then a slew of third-party gasoline *retailers* ultimately passing on inflated fuel costs to consumers. FAC ¶¶ 13–18 (listing numerous retailers at issue); FAC ¶ 44 (alleging in conclusory fashion that inflated LCFS costs were felt at retail level). The existence of so many independent third parties situated between the alleged conduct and Plaintiffs' alleged injury renders any measure of damages too speculative. *See also Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1117 (E.D. Cal. 2002) (no antitrust standing where harm relied on speculation regarding intervening third-party conduct).

The existence of third-party intermediaries also creates the risk of "conflicting claims" and "multiple liability" for the same alleged conduct. *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 542 (9th Cir. 1987) (quoting *AGC*, 459 U.S. at 544). Apportionment problems abound, too. Plaintiffs make no allegations that the Defendants all have the same LCFS costs. This means that even if LCFS costs were passed onto consumers in some form, the degree of price inflation would vary at the wholesale level, and this in turn would be reflected in varying degrees of price inflation at retail stations (whose prices would also necessarily vary in accordance with each individual gas station or chain's cost structures and pricing models). With so many gas stations and intermediary

GIBSON, DUNN &
CRUTCHER LLP

25   MOTION TO DISMISS - 3:25-CV-10282-TLT

distributors potentially at issue, *id.* ¶¶ 13–28, apportioning damages both across the proposed class and up and down the supply chain would be unavoidably complex.

> **c)**  ***Illinois Brick* Bars Plaintiffs' Claim for Damages Under the Sherman Act**

Plaintiffs are indirect purchasers of gasoline.  *See, e.g.*,  FAC ¶ 62 (defining proposed class as all persons and entities who "indirectly purchased" gasoline that was supplied by at least one Defendant").   Indirect purchasers are categorically barred from suing for damages under the Sherman Act. *See Illinois Brick*, 431 U.S. at 730–36.  Accordingly, Plaintiffs' claim damages under the Sherman Act must be dismissed for this reason alone.

## B.    Plaintiffs' UCL Claim Should Be Dismissed

Plaintiffs' fundamental theory in this case is that there was an antitrust conspiracy to commit fraud.  But they have not plausibly alleged an antitrust conspiracy or a fraud, and thus the predicates to their UCL claim fail.  Even assuming a violation, Plaintiffs are not entitled to equitable relief.

### 1.    Plaintiffs Lack Standing to Assert a UCL Claim

As with their antitrust claims, Plaintiffs lack Article III standing to maintain a UCL claim on traceability and redressability grounds.  *Supra* § IV.A.2.  *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2019 WL 633008, at *7 (N.D. Cal. Feb. 14, 2019) (holding that injunctive relief under the UCL "cannot be used . . . to enjoin an event which has already transpired; a showing of threatened future harm or continuing violation is required."); *Hangarter v. Provident Life & Acc. Ins.*, 373 F.3d 998, 1021–22 (9th Cir. 2004)  (district court erred by granting UCL injunction when plaintiff failed to allege "immediate threat" of future injury, as required by Article III).  As to redressability, Plaintiffs cannot evade this issue by styling their request for injunctive relief under the UCL as a demand for a public injunction, FAC ¶ 78.  A plaintiff seeking public injunctive relief under the UCL in federal court must still establish Article III standing by adequately alleging a threat of future harm.  *See, e.g.*, *Stover v. Experian Holdings*, 978 F.3d 1082, 1087 (9th Cir. 2020).

Plaintiffs also lack statutory standing to maintain their UCL claim.  To establish statutory standing under the UCL, a plaintiff must demonstrate that she "suffered injury in fact and [ ] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

Interpreting this statutory language, California courts have held that actual reliance is required under both the unfair and unlawful prongs when the predicate conduct is based on misrepresentations. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363–64 (2010); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1013–14 (N.D. Cal. 2013). Accordingly, to demonstrate statutory standing under the UCL, Plaintiffs must set forth specific facts showing that they actually relied on Defendants' purported misrepresentations contained in the CEC reports and suffered economic injury because of that reliance. *iPhone Application Litig.*, 6 F. Supp. 3d at 1013–14; *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1141 (9th Cir. 2025) ("[A] UCL fraud plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made."); *Figy v. Amy's Kitchen, Inc.*, 2013 WL 6169503, at *4 (N.D. Cal. Nov. 25, 2013) (dismissing UCL claim based on failure to allege reliance); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (explaining 9(b) requirement in a UCL case in federal court); *Henning v. Luxury Brand Partners, LLC*, 2023 WL 3555998, at *1, 7 (N.D. Cal. May 11, 2023) (Thompson, J.) (dismissing UCL misrepresentation claim for failure to comply with Rule 9(b)). The requirement to plead actual reliance "applies *whenever* a UCL action is predicated on misrepresentations," regardless of whether Plaintiffs characterize Defendants' conduct as unlawful, unfair, or fraudulent. *iPhone Application Litig.*, 6 F. Supp. 3d at 1013 (emphasis in original) (collecting California Supreme Court cases).

Plaintiffs do not allege that they viewed, relied on, or even knew about any of Defendants' LCFS reports when they made the gasoline purchases that allegedly resulted in injury. FAC ¶¶ 13–18, 38–47. Indeed, Plaintiffs' alleged purchases of retail gasoline occurred between January 1, 2025 and May 31, 2025, *id.* ¶¶ 13–18, a time period that largely predates when the alleged misstated reports were even released publicly, in May 2025, *id.* ¶ 5. Nor is it plausible that LCFS reports to CARB by *refiners*, no matter their content, factor into consumers' *retail* gasoline purchasing decisions, much less that they do so consistently across the proposed indirect purchaser class. *See Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856, 863 (C.D. Cal. 2022) (allegedly false reports to government did not plausibly deceive consumer).

The failure to allege actual reliance—let alone with the particularity required by Rule 9(b)—compels dismissal of the UCL claim. *See Figy*, 2013 WL 6169503, at \*4.

### 2. Plaintiffs Fail to Allege a Cognizable UCL Claim

Plaintiffs' UCL claim also fails on the merits. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. This creates "three varieties" of claims, *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999), and Plaintiffs fail to state a claim under all of them.

The UCL's "unlawful" prong "borrows violations of other laws" and "makes [them] actionable under the UCL," therefore where a "plaintiff cannot state a claim under the 'borrowed' law, it cannot state a UCL claim either." *Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*, 682 F. Supp. 2d 1003, 1019–20 (N.D. Cal. 2010); *accord Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 880 (2017). Here, Plaintiffs' UCL claim is based on the same factual predicates as their antitrust claims, FAC ¶ 72, and their UCL claim therefore fails for the same reason. *See supra* § IV.A. *See, e.g.*, *Cal. Crane Sch., Inc. v. Google LLC,* 722 F. Supp. 3d 1026, 1041 (N.D. Cal. 2024) (dismissing UCL claim where Sherman and Cartwright claims failed); *In re DRAM Antitrust Litig.,* 28 F.4th 42, 54 n.7 (9th Cir. 2022) (UCL claim "premised upon the existence of an antitrust conspiracy" rises and falls with Sherman Act claim).

To the extent that Plaintiffs' UCL claim instead relies on allegedly unlawful misrepresentations to CARB, that claim also fails because the alleged inflated LCFS cost reports submitted to CARB are not unlawful. The relevant reporting statute, SB 1322, requires that refiners report "[s]eparate quantification of the volume-weighted fees or *estimated valuations of costs* embedded in all wholesale gasoline sales associated with the low-carbon fuel standard (LCFS)." Cal. Pub. Res. Code § 25355(b)(6) (emphasis added); *see also* FAC ¶¶ 35–36. That statute *does not*, however, prohibit a refiner from embedding in its wholesale gasoline sales price any particular fee or estimated cost associated with the LCFS program. *See id.* It requires only that the fees and/or estimated costs that are embedded in wholesale transactions are disclosed to the CEC. *See id.* Plaintiffs allege that Defendants actually incorporated the allegedly inflated LCFS costs reported to the CEC in gas prices, albeit in a single conclusory sentence with no factual basis for

the assertion. *See, e.g.*, FAC ¶ 43. At bottom, Plaintiffs are quibbling with the amount they believe they were charged, not the disclosure of the charges to the CEC, which does not make out a violation of SB 1322. Defendants' alleged reporting under SB 1322, then, cannot serve as a predicate unlawful act in support of Plaintiffs' UCL claim, particularly given the high standards of Rule 9(b).

Plaintiffs cannot get around their failure to plead an "unlawful" UCL claim by attempting to recast the conduct as "unfair." *See* FAC ¶ 74. Where, as here, the "same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason . . . the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers." *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 374 (2001); *accord Beverage v. Apple Inc.*, 101 Cal. App. 5th 736, 755 (2004).

### 3.    Equitable Relief is Not Available

Even if Plaintiffs had standing and adequately alleged a UCL claim, none of the equitable relief they seek under the UCL is permissible.

First, their request for disgorgement (*e.g.*, FAC ¶¶ 12, 77, 102) fails because the UCL only provides for restitution or an injunction; non-restitutionary disgorgement is unavailable. *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1181 (9th Cir. 2019); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144–45 (2003) (non-restitutionary disgorgement not available under the UCL).

Second, Plaintiffs' restitution request fails because a plaintiff seeking restitution in federal court must establish "that she lacks an adequate remedy at law[.]" *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841–44 (9th Cir. 2020). Here, Plaintiffs fail to allege that the "three-fold damages they seek are inadequate or otherwise distinguish their request for restitution from their request for damages." *In re California Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021) (dismissing UCL claim based on failure to allege no adequate remedy at law); *see also Key*, 129 F.4th at 1142 (affirming dismissal of UCL claims for failure to allege no adequate remedy at law because "[t]he Cartwright Act provides for treble damages—hardly an inadequate remedy."); *Sonner*, 971 F.3d at 844 (a plaintiff cannot "seek[] the same sum in equitable restitution . . . as she requested in damages to compensate her for the same past harm.").

GIBSON, DUNN &
CRUTCHER LLP

Plaintiffs' failure to allege Sherman and Cartwright claims dooms their damages claims, *see supra* § IV.A, but that does not mean that damages remedies are theoretically inadequate to make them whole.  *Key*, 129 F.4th at 1142 (holding the plaintiffs' "failure to prove their Cartwright Act claim . . . 'does not make that remedy inadequate'"); *King v. Nat'l Gen. Ins. Co.*, 2025 WL 2494366, at *9 (N.D. Cal. Aug. 29, 2025) (since *Key*, courts have held "that a mere difference in proof between claims does not make the legal remedy inadequate where the claims are rooted in the same theory); *Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *2 (N.D. Cal. Mar. 28, 2024) (similar), *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *3 (N.D. Cal. May 31, 2011) (dismissing damages claims and then rejecting argument that plaintiffs would lack an adequate remedy if damages claims were dismissed); *Bird v. First Alert, Inc.*, 2014 WL 7248734, at *6–7 (N.D. Cal. Dec. 19, 2014) (dismissing UCL claims because damages provided adequate remedy, while also dismissing damages claims); *see also Guzman v. Polaris Indus.*, 49 F.4th 1308, 1312 (9th Cir. 2022) (plaintiff had adequate remedy at law even though damages were time-barred).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed in its entirety.

GIBSON, DUNN &
CRUTCHER LLP

Dated: March 26, 2026

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Samuel G. Liversidge*

Samuel G. Liversidge
Theodore J. Boutrous Jr.
Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
TBoutrous@gibsondunn.com
DSwanson@gibsondunn.com
SLiversidge@gibsondunn.com

S. Christopher Whittaker
Courtney L. Spears
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, California  92612-4412
Telephone: (949) 451-3800
CWhittaker@gibsondunn.com
CSpears@gibsondunn.com

Minae Yu
GIBSON, DUNN & CRUTCHER LLP
341 S. Norton Avenue
Los Angeles, CA 90020
Telephone: (213) 215-0587
myu@gibsondunn.com

William Feldman
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8394
wfeldman@gibsondunn.com

*Attorneys for Defendant CHEVRON U.S.A. INC.*

Dated: March 26, 2026

**JONES DAY**

By: */s/ David Kiernan*

David Kiernan (Bar No. 215335)
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94101-1500
Telephone: (415) 626-3939

dkiernan@jonesday.com

Kelly Watne (Bar No. 307563)
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, California  90071
Telephone: (213) 489-3939
kwatne@jonesday.com

*Attorneys for Defendant MARATHON
PETROLEUM COMPANY LP*

Dated: March 26, 2026        **CLEARY GOTTLIEB STEEN & HAMILTON**

By: */s/ Brian Byrne*
Brian Byrne (Bar No. 181362)
Matthew M. Yelovich (Bar No. 351330)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1841 Page Mill Road
Palo Alto, CA 94304
650-815-4110
bbyrne@cgsh.com
myelovich@cgsh.com

C. Lawrence Malm (*pro hac vice*)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Ave., NW
Washington, D.C. 20037
202-974-1500
lmalm@cgsh.com

*Attorneys for Defendants PBF ENERGY INC.,
MARTINEZ REFINING COMPANY LLC, and
TORRANCE REFINING COMPANY LLC*

Dated: March 26, 2026        **HAWXHURST LLP**

By: */s/ Gerald E. Hawxhurst*
Gerald E. Hawxhurst
Kyle Foltyn-Smith
HAWXHURST LLP
10000 Santa Monica Blvd., Suite 3406
Los Angeles, CA 90067
Telephone: (310) 893-5150
jerry@hawxhurstllp.com
kyle@hawxhurstllp.com

GIBSON, DUNN &
CRUTCHER LLP

32        MOTION TO DISMISS - 3:25-CV-10282-TLT

*Attorneys for Defendant VALERO MARKETING AND SUPPLY COMPANY*

Dated: March 26, 2026

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ Joshua D. Lichtman*

Joshua D. Lichtman (Bar No. 176143)
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street, Forty-First Floor
Los Angeles, CA 90071
213-892-9226
joshua.lichtman@nortonrosefulbright.com

Layne Kruse (*pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
1550 Lamar Street, Suite 2000
Houston, TX 77010
713-651-5194
layne.kruse@nortonrosefulbright.com

*Attorneys for Defendant PHILLIPS 66 COMPANY*

GIBSON, DUNN &
CRUTCHER LLP

33        MOTION TO DISMISS - 3:25-CV-10282-TLT

**ATTORNEY ATTESTATION**

I, Samuel G. Liversidge, am the ECF User whose ID and password are being used to file this Joint Stipulation and Proposed Order.  In compliance with Civil Local Rule 5-l(h)(3), I hereby attest that concurrence in the filing of this document has been obtained from each signatory.


Dated: March 26, 2026                                    */s/ Samuel G. Liversidge*
                                                         Samuel G. Liversidge

GIBSON, DUNN &
CRUTCHER LLP

MOTION TO DISMISS - 3:25-CV-10282-TLT